UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

UNITED STATES OF AMERICA,

                  -against-

TAHEEM SMITH,
        also known as "Ta,"

                      Defendant.

-------------------------------------------------------------------X

**MEMORANDUM AND ORDER**

19-CR-417 (GRB)

**GARY R. BROWN, United States District Judge:**

Pending before the Court is an *in limine* motion by the defendant, TAHEEM SMITH, regarding the appropriate jury charge in connection with felony murder charges in this matter, in which Smith allegedly aided and abetted racketeering- and firearms-related homicides of two individuals under 18 U.S.C. §§ 2, 924(j) and 1959(a)(1). The Indictment charges that Smith, together with a codefendant, committed an armed robbery during which two victims were killed. Relying primarily on *United States v. Gyamfi*, 357 F. Supp. 3d 355, 360 (S.D.N.Y. 2019), and that decision's construction of *Rosemond v. United States*, 134 S.Ct. 1240 (2014), Smith requests that the Court charge the jury that defendant "knew there was a genuine (and not just fanciful or remote) risk that someone would be killed during the robbery."

Because the Court finds that (1) *Gyamfi* appears inconsistent with existing case law and (2) the facts in this matter are sufficiently distinguishable from *Gyamfi*, the motion is denied.[1]

---

[1] Initially, defendant also moved to clarify the applicability of certain sentencing provisions to the defendant. Because the Government clarified its position on the applicable sentences in its response, defendant has withdrawn that portion of the motion.

1

*The Indictment*

Filed on September 10, 2019, the Indictment herein charges that Smith was a member of the Bloods street gang, which "engaged in acts of violence, including murder, attempted murder, robbery and assault, as well as other criminal activity, including narcotics trafficking." Docket Entry ("DE") 1 at 1. Among the purposes of the Bloods enterprise, the grand jury found, was "[e]nriching the members and associates of the enterprise through criminal activity, including robbery and drug trafficking" and "[k]eeping victims and rivals in fear of the enterprise and its members and associates." *Id.* at 2-3.

The racketeering acts charged against defendant Smith include the robbery, attempted robbery, murder and felony murder of two individuals – David Arzu and Janella Curella – which occurred on September 2, 2016. *Id*. at 4-6. Though charged under several different theories, the counts at issue here charge Smith as an aider and abettor of the racketeering murders of Arzu and Curella under § 1959(a)(1), and their firearm-related homicides under § 924(j)(1), found in Counts Three, Four, Eight and Nine.

**FACTS**

In support of its motion, the defense proffers facts, some contested by the Government, which supply the context of the motion. In sum and substance, counsel contends that on the evening in question, Smith was contacted by an associate named Lameek Everett. Smith afforded Everett a ride to Everett's mother's house where, though Smith remained outside, Smith could hear Everett arguing with his mother. Unbeknownst to Smith, Everett's mother was angry that Arzu, a tenant of Everett's mother and one of the robbery-homicide victims, had stolen something from her, which is later defined as an electronic device or game.

Everett left the home, visibly upset, and proposed that Smith could join Everett in an endeavor to make some money by participating in a robbery. Everett and Smith proceeded to a Long Island Railroad station to carry out the robbery. As discussed below, the precise nature of Smith's participation is disputed, but the parties agree that Smith and Everett were both armed and brandishing weapons at the

robbery scene. Also undisputed is the fact that during the robbery, Everett shot and killed both victims. DE 17 at 2-3.

The Government's proffer adds a few details, some of which are disputed. First, the Government defines Smith as a "newer member of the Bloods," while the defendant denies such membership. DE 20 at 1. According to the Government, Arzu had been targeted for the robbery both because he had burglarized Everett's mother's home and because of a belief that Arzu was a drug dealer carrying a substantial amount of cash. *Id.* Smith contends, as relevant herein, that he was unaware of the first motive. DE 21 at 7-8. The Government proffers that Smith and Everett approached the victims, who were accompanied by one or more friends, and both Smith and Everett brandished a firearm. DE 20 at 1. Smith pointed his firearm at the head of a friend of the decedents, stating "Give me everything. Empty your pockets. I'm not playing." *Id.* at 2. Simultaneously, Everett held Arzu at gunpoint, who began to struggle, and Curella attempted to help Arzu. *Id.* Everett shot Curella and then, once Arzu endeavored to assist Curella, Everett shot Arzu. *Id.* Smith immediately grabbed the friend's bag, and the friend fled. *Id.* Smith and Everett left the scene together. *Id.*

On reply, the defense proffers some further facts, and supplies copies of two redacted police reports reflecting statements by eyewitnesses to the police. The nominal purpose of these submissions is to help establish that Everett almost immediately began beating Arzu, in an effort to establish the defense theory that Everett had approached the encounter with the intent – purportedly kept secret from Smith – of attacking Arzu, rather than simply robbing him. *See, e.g.*, DE 21 at 3 ("As soon as Everett saw Arzu on the street, he ran up to Arzu and began assaulting him.").

In its reply, defense counsel asserts that "[f]or the purposes of this motion, the Court should assume the facts to be true as the defense states them, as they depict the defense theory of the case and are supported by statements made to the authorities by eye-witnesses." DE 21 at 1. Perhaps it is not unreasonable, for the purposes of this motion, to assume that Everett held an unspoken motive to seek revenge against Arzu, or at least that there may be evidence from which a reasonable jury could draw such an inference. Importantly, though, while the witnesses' statements supplied to the Court by the

3

defense could be viewed as supporting certain facts proffered, those same statements undercut others. For example, the defense described the robbery as follows:

> Everett covered his face and handed Smith a revolver as Everett proceeded to walk into the street to confront the group of people. *Smith remained on the sidewalk and secreted himself behind an SUV parked on the street approximately 20 feet away.* It was dark outside. Everett pulled out a gun (an automatic) and fired two shots, the first killing a woman, the second killing a man. Smith did not know that the man Everett shot was the tenant who had stolen something from Everett's mother. Two other people who were present ran away; one of them, a man, ran toward Smith in the dark. Seeing Smith with gun in his hand, the man froze. Smith told him to go and the man ran away unharmed.

DE 17 at 3 (emphasis added).   Yet the witness statements provided by the defense suggest that Smith was anything but a passive or distant observer.   For example, one witness observed that:

> all of a sudden, a black guy [presumably Everett] comes out of nowhere and starts beating up DAVE. [The witness] looks to her left and she sees another black guy [presumably Smith] beating and robbing FRANKIE behind her next to a car."

DE 21 at 13.  A second bystander described a couple [presumably the victims] walking past him and his friends, and reported the following:

> After the couple passed them, he then observed two black males wearing hoodies walking fast and towards the couple.  [He] stated the two black males were in their twenties and thin. One of the guys was wearing a gray hoodie and he then heard arguing and yelling. [He] stated it appeared as if the two black males were robbing the couple and he then heard about 5-6 popping sounds like gunfire.

*Id*. at 14.

    **DISCUSSION**

    Section § 1111(a) of Title 18, United States Code provides that

> Murder is the unlawful killing of a human being with malice aforethought. Every murder . . . committed in the perpetration of, or attempt to perpetrate, any . . . robbery . . . is murder in the first degree.

Such acts, generally described as a "felony murder," constitute offenses against the United States in several circumstances relevant to this motion.  One such circumstance is found in 18 U.S.C. § 1959(a)(1), which prohibits the commission of state or federal violent crimes "for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity."  *See United States*

4

*v. Desena,* 287 F.3d 170, 177 (2d Cir. 2002) (under § 1959, "the government may rely on either state or federal law to establish a predicate substantive crime"). Another is found in 18 U.S.C. § 924(j), which provides penalties for "[a] person who, in the course of a violation of subsection (c), causes the death of a person through the use of a firearm," while § 924(c) of Title 18 prohibits the use of a firearm during and in relation to a crime of violence, including a violation of § 1959(a)(1). *See United States v. Payne*, 591 F.3d 46, 68 (2d Cir. 2010) (discussing applicability of § 924(c) to murder in aid of racketeering conviction under § 1959(a)(1)). And Section 2 of Title 18 provides that "[w]hoever commits an offense against the United States, or aids [or] abets . . . its commission, is punishable as a principal."

The question presented here is whether Smith's knowing participation in the armed robbery is sufficient to satisfy the *mens rea* element of the crimes charged, which primarily relate to the "malice aforethought" requisite of § 1111. As the Second Circuit observed:

> In construing a murder statute similar to § 1111, the Supreme Court pointed out in *Schad v. Arizona,* 501 U.S. 624, 639–40, 111 S.Ct. 2491, 2501–02, 115 L.Ed.2d 555 (1991), that "At common law, murder was defined as the unlawful killing of another human being with 'malice aforethought.' The intent to kill and the intent to commit a felony were alternative aspects of the single concept of 'malice aforethought.' ... [S]tatutes have in most cases retained premeditated murder and some form of felony murder (invariably including murder committed in perpetrating or attempting to perpetrate a robbery) as alternative means of satisfying the mental state that first degree murder presupposes."

*United States v. Thomas*, 34 F.3d 44, 49 (2d Cir. 1994). Smith argues, however, that because he was unaware of Everett's purportedly divergent *mens rea*, which Smith claims was an intent to attack or kill, rather than rob, Arzu, the Government should have to establish that he "knew there was a genuine (and not just fanciful or remote) risk that someone would be killed during the robbery."

The proposed jury charge emanates from the decision in *Gyamfi*, which was an attempt to apply the Supreme Court's decision in *Rosemond v. United States*, 134 S.Ct. 1240 (2014). *Rosemond* did not involve felony murder; rather, in that case, the Court examined the jury instructions given in connection with a charge that a defendant aided and abetted the use of a firearm during an illegal narcotics transaction. *Rosemond* begins with the proposition that "[a]n active participant in a drug transaction has the intent needed to aid and abet a § 924(c) violation when he knows that one of his confederates will

5

carry a gun." *Rosemond,* 572 U.S. at 77.  However, because there was evidence that the defendant did not know in advance that his cohorts would be armed, the conviction required a demonstration of "foreknowledge that his confederate will commit the offense with a firearm." *Id.* at 78.  Thus, the Court vacated the judgment based on the failure to charge the jury that Rosemond needed "advance knowledge of a firearm's presence." *Id.* at 82.

      The *Gyamfi* decision, from which the requested jury instruction emanates, represents one Court's efforts to apply *Rosemond* in the context of aiding and abetting a felony murder – in that case, death resulting from an armed robbery charged under the Hobbs Act.  *Gyamfi* suggests that in *Rosemond*, "the Supreme Court stated in broad terms that the accomplice must independently 'intend[ ] to facilitate' 'the specific and entire crime charged.'" *Gyamfi*, 357 F. Supp. 3d at 359.  *Gyamfi* construes *Redmond* "to require a stricter showing of scienter for an accomplice than is required of the principal." *Id.*  Thus, *Gyamfi* concludes, to establish liability under aiding and abetting, "the prosecution must prove that Gyamfi subjectively knew, in advance of the attempted robbery, that there was a genuine risk someone would be killed during the robbery." *Id.* at 362-363.  At least one other court has adopted this interpretation.  *See United States v. Esteves*, 2020 WL 42711, at *3 (E.D. La. Jan. 3, 2020) (holding the Government must establish that "the defendant actively participated with advance knowledge that there was a genuine risk that a person might be shot and killed during the Hobbs Act robbery").  Based on its reading of *Rosemond*, the district court in *Gyamfi* crafted the proposed jury instruction.  *Gyamfi,* 357 F. Supp. 3d at 363 ("[T]he Court intends to instruct the jury that, to convict Gyamfi of aiding and abetting felony murder, the jury must find . . . that, at the time he rendered his aid, Gyamfi knew there was a genuine (and not just fanciful or remote) risk that someone would be killed during the robbery.").  Nevertheless, *Gyamfi* appears to be a minority view and, more importantly, appears to be at odds with the law in this Circuit.

      Prior to *Rosemond,* the Second Circuit repeatedly held that "the malice of the robbery satisfies murder's malice requirement." *United States v. Thomas*, 34 F.3d 44, 48 (2d Cir. 1994); *United States v. Mitchell*, 122 Fed.Appx. 539, 541 (2d Cir. 2005) ("[M]alice aforethought can be demonstrated by

6

showing that the homicide occurred during the commission of a robbery."); *United States v. Reis*, 369 F.3d 143, 152 (2d Cir. 2004) (same); *cf. United States v. Zayac*, 765 F.3d 112, 116-18 (2d Cir. 2014) (affirming aiding and abetting conviction for felony murder under 18 U.S.C. § 924(j) where co-conspirator possessed and fired gun). In *Thomas*, the Second Circuit held that a jury charge providing that "killing is done with malice aforethought ... if it results from the perpetration of ... a robbery" was correct. *Thomas,* 34 F.3d at 49. Importantly, the Circuit also upheld the trial court's refusal to give an alibi charge on behalf of one defendant who was in New York City at the time the homicide took place in Syracuse, because such an alibi would not have exonerated that defendant under a conspiracy or accomplice theory. *Id.* at 50. In *Thomas,* then, the Circuit held that the requisite *mens rea* for aiding and abetting liability did not extend beyond facilitation of an armed robbery. Subsequent to *Rosemond*, the Second Circuit reaffirmed this precedent in a summary order, expressly disavowing the notion that *Rosemond* undermined the precedent established in *Thomas*. *United States v. Rivera*, 679 Fed. Appx. 51, 54-55 (2d Cir. 2017) (holding that aiding and abetting conviction does not require demonstration that "the victim's death was planned in advance of an underlying robbery"); *cf. United States v. Garcia-Ortiz*, 792 F.3d 184, 190 (1st Cir. 2015) ("*Rosemond* did not enhance the knowledge required of an aider and abettor of § 924(j).").

The *Gyamfi* decision dismisses the Second Circuit decision in *Rivera*, which appears dispositive of the question, principally because, as a summary order, "*Rivera* is not a precedential decision." <u>Gyamfi</u>, 357 F. Supp. 3d at 360. However, such determinations cannot be so lightly discarded. As several decisions have noted, a district court is not "'at liberty ... to disregard [or] contradict a Second Circuit ruling squarely on point merely because it was rendered in a summary order.'" *Abrue v. United States*, 2020 WL 4570338, at *4 (S.D.N.Y. Aug. 7, 2020) (citing 2d Cir. R. 32.1.1(a) and quoting *United States v. Tejeda*, 824 F. Supp. 2d 473, 475 (S.D.N.Y. 2010)); *see also Mendez v. Starwood Hotels & Resorts Worldwide, Inc.,* 746 F. Supp. 2d 575, 595 (S.D.N.Y. 2010) (noting that summary orders offer "some indication of how the Court of Appeals might rule were it to decide the issue in a binding opinion"). The Second Circuit abides by a similar principal, noting that "[d]enying summary orders precedential effect

7

does not mean that the court considers itself free to rule differently in similar cases." *United States v. Payne*, 591 F.3d 46, 58 (2d Cir. 2010).

Additionally, where, as here, "the Second Circuit has spoken directly to the issue presented by this case . . . this Court is required to follow that decision 'unless and until it is overruled in a precedential opinion by the Second Circuit itself or 'unless a subsequent decision of the Supreme Court so undermines it that it will almost inevitably be overruled by the Second Circuit.'" *United States v. Diaz*, 122 F. Supp. 3d 165, 179 (S.D.N.Y. 2015), *aff'd*, 854 F.3d 197 (2d Cir. 2017) (quoting *Doscher v. Sea Port Grp. Sec., LLC,* No. 15–CV–384 (JMF), 2015 WL 4643159, at *3 (S.D.N.Y. Aug. 5, 2015)); *cf. Monsanto v. United States,* 348 F.3d 345, 351 (2d Cir. 2003) ("[W]e-like the district court-are required to follow . . . a binding precedent of our court. . . . unless and until that case is reconsidered by our court sitting in banc (or its equivalent) or is rejected by a later Supreme Court decision."). Because it is far from inevitable that *Rosemond* will lead the Circuit to overrule its well-established precedent concerning felony murder and aiding and abetting liability, this Court is bound by the clear precedent of *Thomas* and *Rivera*. Thus, the Court rejects the conclusion in *Gyamfi* that it is "an open question in this Circuit what *mens rea* the Government must prove to convict a defendant of felony murder when he is simply an aider-and-abettor of the underlying felony." *Gyamfi* at 362.

Even assuming, arguendo, that the reasoning of *Gyamfi* proved persuasive, the facts here distinguish this case from those opinions in which *mens rea* presented a closer question. In *Gyamfi*, after all, the defendant "aided and abetted an armed robbery, committed by someone else in Gyamfi's absence but that resulted in a murder." *Gyamfi* at 357. This case is also factually distinguishable from *Rosemond,* in which the Supreme Court examined 924(c) convictions of defendants who "'kn[ew] nothing of a gun until it appear[ed] at the scene,'" and even if not, at the time they learned about the gun, they had already completed their assistance or had "'at that late point . . . no realistic opportunity to quit the crime.'" *United States v. Prado*, 815 F.3d 93, 102 (2d Cir. 2016) (quoting *Rosemond*, 134 S.Ct. at 1249). According to the facts proffered by both counsel, as well as the police reports supplied by counsel, Smith drove Everett to the crime scene where Smith, armed with a handgun, and Everett, also brandishing

a handgun, confronted a larger group of individuals with the intention of robbing them at gunpoint. *Compare* United States v. Barrett, 750 F. App'x 19, 25–26 (2d Cir. 2018) (holding that defendant who drove himself and two armed confederates to site of robbery murder "supported aiding and abetting culpability as detailed in *Rosemond*"). Given these circumstances, there can be no question about Smith's intent to participate in a violent street crime. That Everett was a known member of the Bloods street gang renders questions about Smith's expectations about potential violence further attenuated. *See, e.g.*, *United States v. Price*, 2009 WL 973370, at *2 (E.D.N.Y. 2009), *as clarified*, 2009 WL 1010483 (E.D.N.Y. Apr. 14, 2009) ("The court recognizes that media reports and portrayals have engraved a violent image of the Bloods in the popular conscience.").

At the same time, Smith's argument does not appear (as it cannot) to be based on an absence of intent regarding his participation in an armed robbery. Rather, he predicates his motion upon a slightly more nuanced argument: Smith contends that Everett had – unbeknownst to Smith – a heightened level of premeditation in that he was seeking revenge against Arzu. Thus, Smith argues that because Everett was on a "mission to murder" Arzu (an assertion that cannot be sustained fully upon the facts proffered), that the *Gyamfi* instruction is required by *Rosemond* to ensure that defendant's "intent must go to the specific and entire crime charged." *Rosemond*, 572 U.S. at 76. It is, of course, not uncommon that violent crimes, including acts chargeable under § 1959, can have multiple motives. *See, e.g.*, *United States v. Payne*, 591 F.3d 46, 64 (2d Cir. 2010) (discussing multiple purposes underlying § 1959 murders including profit, protection against reprisals and position within enterprise).

More importantly, though, the express language of *Rosemond* specifically eschews any such conclusion. In its determination, the Supreme Court rejected a second contention by Rosemond that is significant to this decision. The Court described that argument as follows:

> Rosemond argues that a participant in a drug deal intends to assist a § 924(c) violation only if he affirmatively desires one of his confederates to use a gun. . . [A]ccording to Rosemond, the instructions must also permit the jury to draw the opposite conclusion— that although the defendant participated in a drug deal knowing a gun would be involved, he did not specifically want its carriage or use. *That higher standard, Rosemond claims, is necessary to avoid subjecting persons of different culpability to the same punishment.*

9

572 U.S. at 79 (emphasis added). In roundly rejecting that argument, the Court concluded:

> *What matters for purposes of gauging intent, and so what jury instructions should convey, is that the defendant has chosen, with full knowledge, to participate in the illegal scheme—not that, if all had been left to him, he would have planned the identical crime.* Consider a variant of Rosemond's example: The driver of a getaway car wants to help rob a convenience store (and argues passionately for that plan), but eventually accedes when his confederates decide instead to hold up a national bank. Whatever his original misgivings, he has the requisite intent to aid and abet bank robbery; after all, he put aside those doubts and knowingly took part in that more dangerous crime. The same is true of an accomplice who knowingly joins in an armed drug transaction—regardless whether he was formerly indifferent or even resistant to using firearms. The law does not, nor should it, care whether he participates with a happy heart or a sense of foreboding. Either way, he has the same culpability, because either way he has knowingly elected to aid in the commission of a peculiarly risky form of offense.

572 U.S. at 79 (emphasis added).

Here, it is beyond peradventure, on the facts proffered, that Smith "ha[d] knowingly elected to aid in the commission of a peculiarly risky form of offense," to wit: the armed robbery. The Government need not prove anything more.

**CONCLUSION**

Based on the foregoing, the motion *in limine* is DENIED.

Dated: Central Islip, NY
September 27, 2020

　　　　　　　　　　　　　　　　　　　　　　　　/s/ Gary R. Brown_____
　　　　　　　　　　　　　　　　　　　　　　　　Hon. Gary R. Brown
　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge